# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| SPECIAL COUNSEL<br>EX REL. DALE KLEIN,<br>       Petitioner,<br><br>      v.<br><br>DEPARTMENT OF VETERANS<br>  AFFAIRS,<br>       Agency. | DOCKET NUMBER<br>CB-1208-16-0023-U-1<br><br><br>DATE: June 1, 2016 |

## THIS STAY ORDER IS NONPRECEDENTIAL[1]

Loretta Poston, Esquire, Tampa, Florida, for the relator.

Sheri S. Shilling, Esquire, Washington, D.C., for the petitioner.

G.M. Jeff Keys, Esquire, St. Louis, Missouri, for the agency.

## BEFORE

Mark A. Robbins, Member

## ORDER ON STAY REQUEST

¶1 Pursuant to 5 U.S.C. § 1214(b)(1)(A), the Office of Special Counsel (OSC) has requested a 45-day stay of the decision to terminate Dr. Dale Klein's

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. 5 C.F.R. § 1201.117(c).

appointment while OSC completes its investigation and legal review of Dr. Klein's prohibited personnel practice complaint and determines whether to seek corrective action.  For the reasons discussed below, OSC's stay request is GRANTED.  OSC's request for an order returning Dr. Klein to his duties and responsibilities as a physician during the pendency of the stay is DENIED.[2]

## BACKGROUND

¶2        In its May 26, 2016 stay request, OSC alleges that it has reasonable grounds to believe that the Department of Veterans Affairs (DVA) has decided to terminate Dr. Klein's appointment, during his probationary period, in reprisal for whistleblowing disclosures and protected activity under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), and (b)(9)(C).  OSC alleges that Dr. Klein, a pain management physician, contacted DVA's Office of the Inspector General (OIG) and DVA management officials to report that patients were diverting controlled substances and DVA was not taking appropriate preventive measures and that the agency had not provided him with a sterile area to perform injections and other interventional procedures.  According to OSC, Dr. Klein alleges that, in anticipation of an OIG onsite inspection, a manager told him to "watch what [he] says to OIG."  OSC also alleges that Dr. Klein claims to have been intimidated, harassed, and retaliated against for contacting OIG.  According to OSC, Dr. Klein also disclosed to the Chief Medical Officer for the Veteran Integrated Service Network that the quality of radiologist dictations was affecting his ability to determine appropriate spinal procedures for patients, that no appropriate procedure room had been provided where he could perform interventional

---

[2] On May 31, 2016, the Department of Veterans Affairs filed a response to OSC's initial stay request.  The Board's regulations do not contemplate an agency response to an initial OSC stay request in original jurisdiction cases.  *See* 5 C.F.R. §§ 1201.134-.136. I have nevertheless considered the agency's response.  The information contained in the agency's response merely confirms my conclusion, after reviewing OSC's stay request, to not return Dr. Klein to his former physician duties and responsibilities.

procedures, and that he had been harassed and intimidated for trying to improve patient care.

¶3      OSC contends that Dr. Klein's protected disclosures and activities were a contributing factor in the decision to terminate his appointment because, shortly after his protected disclosures and activities, the agency convened its Professional Standards Board, which recommended termination of Dr. Klein's appointment, and the management official responsible for convening the Professional Standards Board knew about the appellant's protected disclosures and activities.

## ANALYSIS

¶4      Under 5 U.S.C. § 1214(b)(1)(A)(i), OSC may request that any member of the Merit Systems Protection Board order a stay of any personnel action for 45 days if OSC determines that there are reasonable grounds to believe that the personnel action was taken, or is to be taken, as a result of a prohibited personnel practice.  Such a request shall be granted unless the Board member determines that, under the facts and circumstances involved, such a stay would not be appropriate.  5 U.S.C. § 1214(b)(1)(A)(ii).  OSC's stay request need only fall within the range of rationality to be granted, and the facts must be reviewed in the light most favorable to a finding of reasonable grounds to believe that a prohibited personnel practice was (or will be) committed.  *See Special Counsel ex rel. Aran v. Department of Homeland Security*, 115 M.S.P.R. 6, ¶ 9 (2010).

¶5      As OSC states, it is a violation of 5 U.S.C. § 2302(b)(8) to take a personnel action because an employee made protected whistleblowing disclosures,[3] and it is a violation of 5 U.S.C. § 2302(b)(9)(A)(i) and (b)(9)(C) to take a personnel action because an employee participated in protected activity, including exercising the

[3] A protected disclosure is a disclosure of information that the individual reasonably believes evidences a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.  5 U.S.C. § 2302(b)(8); *Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 20 (2013).

right to file a complaint regarding a violation of 5 U.S.C. § 2302(b)(8) and disclosing information to the Inspector General of an agency. Considering the deference that generally should be afforded to OSC, and the assertions made in its stay request, I find that there are reasonable grounds to believe that DVA decided to terminate Dr. Klein's appointment, during his probationary period, based on his whistleblowing disclosures and protected activity in violation of 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), and (b)(9)(C).

¶6    It appears that Dr. Klein may have reasonably believed he disclosed a substantial and specific danger to public health and a violation of law, which are categories of protected disclosures under 5 U.S.C. § 2302(b)(8), by alleging that patients were diverting controlled substances. It also appears that Dr. Klein may have reasonably believed that he was disclosing a substantial and specific danger to public health under 5 U.S.C. § 2302(b)(8) when he reported that he lacked an appropriate space to perform interventional procedures and his concerns about the quality of the radiology dictations. Based on the information provided by OSC, it appears that Dr. Klein also may have participated in protected activity, as defined by 5 U.S.C. § 2302(b)(9)(A)(i) and (b)(9)(C), by filing complaints with OIG regarding violations of 5 U.S.C. § 2302(b)(8) and participating in a subsequent OIG investigation.

¶7    The contributing factor element of 5 U.S.C. § 1221(e)(1) may be established through the knowledge/timing test, i.e., that the official taking the personnel action knew of the protected disclosure or activity and the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor. *See Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 18 (2015); *Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446, ¶ 7 (2014). According to OSC, the manager responsible for convening the Professional Standards Board had actual knowledge of some of Dr. Klein's protected disclosures and protected activity, and the agency's decision to terminate Dr. Klein's appointment was made within

7 months of his first disclosure, which would satisfy the knowledge/timing test. *See Mastrullo*, 123 M.S.P.R. 110, ¶ 21 (recognizing that the Board has held that a personnel action taken within approximately 1 to 2 years of the appellant's disclosures satisfies the knowledge/timing test). Based on these facts, I find it appropriate to grant OSC's request to stay the termination action.

¶8        In addition to its stay request, OSC further requests that the Board order that DVA return Dr. Klein to his position as a pain management physician and not affect any change to Dr. Klein's original duties or responsibilities. A stay granted pursuant to 5 U.S.C. § 1214(b) is issued as a means of minimizing the adverse consequences of a prohibited personnel practice, providing time for a full investigation and settlement negotiations, and safeguarding the status quo ante while the interested parties prepare their cases for presentation to the Board. *Special Counsel v. Department of Veterans Affairs*, 60 M.S.P.R. 40, 41 (1993). If OSC has met its burden, the employee is usually placed in the same position he held before the agency's allegedly improper actions. *Special Counsel v. Department of the Interior*, 68 M.S.P.R. 266, 269 (1995).

¶9        Based on OSC's initial stay request, DVA is concerned about returning Dr. Klein to the duties and responsibilities of his position. The Board has recognized that an agency may show a compelling reason for not returning an employee to the duties and responsibilities of his position during the pendency of a stay. *See, e.g.*, *Special Counsel v. Department of Transportation*, 72 M.S.P.R. 104, 107‑08 (1996). OSC notes that the decision to terminate Dr. Klein was not based on patient care. However, OSC also quotes the Professional Standards Board as stating that its decision was based on Dr. Klein's "poor interactions . . . with multiple employees and departments" and his "unwillingness to take direction from those in his chain of command." Given the nature of Dr. Klein's position and the critical importance of the DVA's obligations to our veterans and those who provide them with medical care, I find this presents a compelling reason for not returning him to the duties and responsibilities of a physician, and

I do not order his return to those duties and responsibilities at this stage in the proceedings.

## ORDER

¶10      Based on the foregoing, I conclude that granting OSC's stay request is appropriate.   Accordingly, a 45-day stay of Dr. Klein's termination is GRANTED.  The stay shall be in effect from June 1, 2016, through and including July 15, 2016.  It is further ORDERED that:

(1)  DVA will reinstate Dr. Klein to the status quo ante but is not required to return Dr. Klein to his duties and responsibilities as a physician;

(2)  DVA shall not affect any change to Dr. Klein's salary, grade level, or duty station, or impose upon him any requirement which is not required of other employees of a comparable grade level;

(3)  Within 5 working days of this Order, DVA shall submit evidence to the Clerk of the Board showing that it has complied with this Order;

(4)  Any request for an extension of this stay pursuant to 5 U.S.C. § 1214(b)(1)(B) must be received by the Clerk of the Board, together with any further evidentiary support, on or before June 30, 2016; and

(5)  Any comments on such a request that DVA wants the Board to consider pursuant to 5 U.S.C. § 1214(b)(1)(C) must be received by the Clerk of the Board on or before July 7, 2016.


FOR THE BOARD:                    _____
                                 William D. Spencer
                                 Clerk of the Board

Washington, D.C.